# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA FLORES,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No. 1:16-cv-00878-SAB<br><br>ORDER GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING ACTION FOR FURTHER DEVELOPMENT<br><br>(ECF Nos. 13, 14,15) |

**I.**

**INTRODUCTION**

Plaintiff Patricia Flores ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her applications for disability benefits and supplemental security income pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from lumbar degenerative disc disease, obesity, cervical degenerative disc disease, hypertension, microvascular angina, hyperlipidemia, and anxiety. For the reasons set forth below, Plaintiff's Social Security appeal shall be granted and remanded for further development.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 7, 9.)

1

## II.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on August 28, 2012. (AR 249-65.) Plaintiff's applications were initially denied on December 26, 2012, and denied upon reconsideration on June 28, 2013. (AR 163-67, 170-79.) Plaintiff requested and received a hearing before Administrative Law Judge Sharon Madsen ("the ALJ"). Plaintiff appeared for a hearing on November 20, 2014. (AR 27-58.) On January 30, 2015, the ALJ found that Plaintiff was not disabled. (AR 10-20.) The Appeals Council denied Plaintiff's request for review on April 14, 2016. (AR 1-3.)

### A. Hearing Testimony

Plaintiff testified at the November 20, 2014 hearing.[3] Plaintiff is 5'2'' and weighs 200 pounds. (AR 30.) She lives in an apartment with her daughter and two grandchildren. (AR 31.) She did not have a driver's license at the time of the hearing because she did not renew it. (AR 31.) Usually her daughter takes her to her appointments. (AR 31.) She has received her GED. (AR 31-32.)

She needs help scrubbing her feet and legs in the shower. (AR 32.) She has problems putting on her shoes and socks. (AR 42.) She does not do any household chores, dishes, cooking, or microwaving. (AR 32.) She does not do any shopping or social activities. (AR 33.) She does not do anything with her grandchildren. (AR 34.)

On a typical day, she spends most of her time laying down with her legs straight and her head back. (AR 33.) She watches TV while she is laying down. (AR 33.) She takes naps off-and-on during the day. (AR 33.) She never gets up and goes for walks. (AR 33.)

In 1999, she worked at the Department of Social and Health Services in Washington interviewing clients for the pre-eligibility for welfare. (AR 34.) Starting in 2002, she worked for

---

[2] Citations to the Social Security Administrative Transcript will be designated as "AR" (administrative record). Page numbers will refer to the page numbers as stamped and indexed in the lodged transcript. (See ECF No. 10.)

[3] The record was kept open for a week pursuant to Plaintiff's counsel's request because she was attempting to get records from Ruth Townsend, LCSW. (AR 28-29.)

Fresno County Economics Opportunities Commission interviewing clients for the WIC Program. (AR 34.) She has provided daycare for her grandchildren at different times. (AR 35.) In 2006, she worked a temporary job with a housing authority doing customer service over the phone. (AR 35.) She worked for Milligan scheduling appointments during tax season for three months. (AR 35-36.) In 2005, she worked for United Health in Parlier interviewing clients for WIC Program. (AR 36.) When she worked with the welfare department and WIC, she was usually sitting for most of the day and she spent very little time on her feet. (AR 37.)

She has constant back pain 24 hours a day, especially if she is sitting up. (AR 37.) She has to switch positions, including possibly standing up. (AR 37.) The best position for her is laying down with both of her legs stretched out. (AR 37.) Sitting is the worst position for her, but standing is also bad. (AR 39.) She is on Soma, methadone, and Norco for the pain, which do help, but she feels drowsy and nauseous and she forgets things. (AR 38.) The last time she saw Dr. Henry Aryan, he was going to do surgery, but her insurance did not cover it, so he said to keep taking the medications and wait a little longer. (AR 38.) He said that her condition would get worse. (AR 38.) She feels that her condition worsened in the month prior to the hearing. (AR 39.) The injections she received as treatment did not help much. (AR 39.) She fell in her bathtub two days before the hearing when her leg gave out causing a concussion and bruising. (AR 50.) She also fell about a month before the hearing when she was trying to get on the bed and her right leg went limp and gave out. (AR 50-51.)

She has constant neck pain that goes into her arms and causes her fingertips to be numb, tingly, and so that she does not feel them. (AR 39.) She is taking medications and has not been referred to anybody for her neck because it is a recent issue. (AR 39-40.) She tried medication for nerve pain, but she had a seizure so she stopped using it. (AR 43.) She also uses a cream for arthritis which helps a little bit, but the pain then comes back. (AR 40.) She has not been sent for a nerve conduction study for her hands. (AR 41.) She can hold her head in one position, such as looking at a monitor, for three to four minutes before she needs to take a break for about an hour. (AR 47-48.) She is able to move her head side to side so that she touches her chin to her shoulders, but it hurts. (AR 48.) She also has pain moving her head front to back where her

chin touches her chest and then she looks up. (AR 48.) She feels like her bones are cracking in the back of her head. (AR 48.)

She also has chest pain that has improved with medication, but has not gone away. (AR 40.) The doctor told her that the blood is flowing really slowly into the smaller veins, so over time it might improve. (AR 41.) She has high blood pressure and is still taking medication for her cholesterol. (AR 41.)

It is hard for her to sleep because of the pain and she is also very forgetful. (AR 41.) She can lift two to three pounds, such as a bag of sugar. (AR 41.) She can sit for five to ten minutes before she has to stand up and she can stand for five minutes before she has to sit or lay down. (AR 41-42.) She can walk half a block. (AR 42.) She cannot walk on uneven surfaces like grass or gravel because of the pain in her leg and her right leg feels like it is going to give out. (AR 48-49.) She cannot bend over and squat down to pick something up off the floor. (AR 42.) She has problems climbing stairs. (AR 43, 49.) She has to hold onto her daughter when she goes up or down a curb because she feels unbalanced. (AR 49.) She has problems lifting her arms over her head, picking up small things, and holding onto objects. (AR 43-44.) The rain and cold cause her bones to hurt and her pain to increase. (AR 47.)

She is scared to go anywhere and it is a struggle for her to leave her room because she feels like something bad is going to happen to her. (AR 44.) Her anxiety is worse when she is around a crowd of people, including when she is around her friends and family. (AR 44.) She feels embarrassed and as if she has to run away when she is around friends and family. (AR 44.) She is constantly depressed and crying. (AR 51.) She does not have suicidal thoughts, but she feels worthless. (AR 51.) The depression and anxiety cause her to hardly eat and she mainly likes to eat sweets. (AR 51-52.) She is taking Citalopram and Amitriptyline for her anxiety and depression and they help her relax and sometimes help her anxiety. (AR 45.) She feels that she needs different medication because she feels like it is not helping her anymore. (AR 45.) She saw Ms. Townsend three or four times for her mental health, but then insurance would not cover it anymore, so she stopped going. (AR 45-46.) She had not seen Ms. Townsend in the eight months prior to the hearing. (AR 46.) She told Ms. Townsend that she is scared to be around

people and to go outside. (AR 46.) She had an appointment with Mental Health for the day after the hearing. (AR 46.) She had rescheduled previous appointments with Mental Health because she did not want to go out. (AR 46.) She thinks that getting help with her mental issues will help her be able to function. (AR 51.)

She cannot pay attention to what's happening on TV because she dozes on and off. (AR 45.) She can stay focused for five minutes before she has to take a break for two or three hours. (AR 49.) When she is taking a break, she lays down with her head back on a pillow. (AR 49-50.) Her daughter manages the finances in the family. (AR 45.)

Stephen Schmidt, a vocational expert ("VE"), also testified. The VE testified that Plaintiff's past work was babysitter, DOT code 301.677-010, medium, SVP 3; receptionist, DOT code 237.367-038, sedentary, SVP 4, but performed at medium; social service aide, DOT code 195.367-034, light, SVP 6, but performed at sedentary, and customer clerk, DOT code 241.367-014, sedentary, SVP 5. (AR 53.) The ALJ gave the VE hypothetical questions regarding an individual of the same age, education and work background as Plaintiff. (AR 53.)

The ALJ's first hypothetical was for an individual who could lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk 6 to 8 hours a day; occasionally climb ladders, ropes, and scaffolds, stoop, and crouch; and frequently climb stairs, crawl, kneel, and balance. (AR 53.) The VE testified that the individual could do all of Plaintiff's past work except the babysitter job. (AR 53.) The receptionist job would be as performed in the national economy, but not as actually performed. (AR 53.)

The second hypothetical was for an individual who could lift and carry 20 pounds occasionally and 10 pounds frequently; sit 6 to 8 hours; stand or walk 4 hours; cannot climb ladders, ropes, or scaffolds; and occasionally climb stairs, stoop, crouch, crawl, kneel, and balance. (AR 53-54.) The VE testified that the individual could perform the customer clerk job, the receptionist job as performed in the national economy, and social service aide as actually performed. (AR 54.)

The third hypothetical was based on the second hypothetical with the addition of occasional overhead reaching, occasional forceful gripping and grasping, and no static neck

positioning like keyboarding. (AR 54.) The VE testified that the individual could not perform Plaintiff's past relevant work, but could perform other jobs. (AR 54.) The individual could perform jobs such as parking attendant, DOT code 915.473-010, light, SVP 2, which has 12,000 jobs in California and 68,000 jobs nationally; information clerk, DOT code 237.367-018, light, SVP 2, which has 18,000 jobs in California and 140,000 jobs nationally; and office helper, DOT code 239.567-010, light, SVP 2, which has 37,000 jobs in California and 255,000 jobs nationally. (AR 54.)

The fourth hypothetical was based on the third hypothetical with the addition of simple, routine tasks and only occasional public contact. (AR 54.) The VE testified that the hypothetical eliminated work. (AR 55.)

The fifth hypothetical was based on prior hypotheticals, except decreasing to the sedentary exertional level, lifting and carrying 10 pounds occasionally and frequently, sitting 6 to 8 hours, standing or walking 2 hours, and occasional fingering, feeling, gripping, and grasping. (AR 55.) The VE testified that the hypothetical eliminated work. (AR 55.)

Plaintiff's counsel asked a hypothetical based on the ALJ's first hypothetical, but with an additional unscheduled break of at least an hour. (AR 55.) The VE testified that the individual could not do any of Plaintiff's past work or any other work. (AR 55.) Plaintiff's counsel then asked a hypothetical based on the ALJ's second hypothetical, but the individual would be off task approximately 15% of the time. (AR 55.) The VE testified that the individual could not do any of Plaintiff's past work or any other work. (AR 55.)

### B. ALJ Findings

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff met the insured status requirements of the Social Security Act through December 31, 2012.
- Plaintiff has not engaged in substantial gainful activity since January 15, 2012, the alleged onset date.
- Plaintiff has the following severe impairments: lumbar degenerative disc disease, obesity, cervical degenerative disc disease, hypertension, microvascular angina, and

1 hyperlipidemia.

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

- Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) including lifting and carrying 20 pounds occasionally and 10 pounds frequently in an 8-hour workday, with the following restrictions: she can stand and walk for four hours and can sit for 6-8 hours in an 8-hour workday with normal breaks. She can occasionally stoop, kneel, crouch, crawl, balance, and climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. She can occasionally reach overhead and occasionally forcefully grip and grasp. She cannot hold static neck positions, such as is required for keyboarding.

- Plaintiff is unable to perform any past relevant work.

- Plaintiff was born on July 23, 1965, and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

- Plaintiff has at least a high school education and is able to communicate in English.

- Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

- Plaintiff has not been under a disability, as defined in the Social Security Act, from January 15, 2012, through the date of the decision.

(AR 10-20.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any

7

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of

Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff contends that the ALJ erred in evaluating her subjective complaints of pain and in discrediting her daughter's statements. Defendant counters that the ALJ correctly evaluated Plaintiff's subjective complaints of pain and provided clear and convincing reasons to determine that her complaints were not credible and correctly discredited the lay witness testimony by providing germane reasons for rejecting Plaintiff's daughter's testimony.

### A. Plaintiff's Credibility

Plaintiff contends that the ALJ erred because she failed to provide clear and convincing reasons for rejecting Plaintiff's testimony. Plaintiff asserts that the ALJ did not specify any statements of Plaintiff's that the ALJ finds to be unreliable or any explanation as to why any statement of Plaintiff's is not credible. Defendant counters that the ALJ provided a detailed summary of Plaintiff's testimony and then noted that the testimony was inconsistent with the medical evidence of record, which failed to demonstrate any degree of limitation consistent with Plaintiff's complaints. Defendant also argues that the ALJ noted that the record was lacking in objective medical evidence to support Plaintiff's statements of a disabling level of pain, significant physical or mental limitations. Plaintiff replies that the examples of evidence that Defendant cites to as inconsistencies were not found by the ALJ, and are merely post hoc rationalizations.

"An ALJ is not required to believe every allegation of disabling pain or other non-

9

exertional impairment." Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation and citations omitted). Determining whether a claimant's testimony regarding subjective pain or symptoms is credible, requires the ALJ to engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the claimant to show that her impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. Smolen, 80 F.3d at 1282.

Second, if the first test is met and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of her symptoms by offering "clear and convincing reasons" for the adverse credibility finding. Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1160 (9th Cir. 2008). The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted).

Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. Lingenfelter, at 1040; Thomas, 278 F.3d at 958. In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . . ." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008)

(quoting Smolen, 80 F.3d at 1284).

In this instance, the ALJ found that Plaintiff's impairments could be reasonably expected to cause the alleged symptoms, but that her statements regarding the intensity, persistence, and limiting effects were not entirely credible "for the reasons explained in this decision." (AR 15.) The ALJ stated that "[t]he objective medical evidence was consistent with the residual functional capacity cited herein." (AR 15.) After discussing the objective findings and medical evidence of Plaintiff's back impairment, the ALJ stated, "[t]hese objective findings were entirely consistent with [Plaintiff's] ability to perform a restricted range of light work with the above-cited limitations." (AR 15-17.) The ALJ also discussed Plaintiff's hypertension, microvascular angina, hyperlipidemia, and obesity, and found that "[t]he objective evidence was consistent with the above-cited residual functional capacity" and "[o]verall the medical record did not support any greater limitations than the above cited residual functional capacity." (AR 17-18.)

The determination that a claimant's complaints are inconsistent with clinical evaluations can satisfy the requirement of stating a clear and convincing reason for discrediting the claimant's testimony. See Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297 9th Cir. 1999). However, the ALJ cannot discredit Plaintiff's pain testimony solely because it is found not to be supported by the objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991).

Here, the only reason that the ALJ gave for discrediting Plaintiff was that her testimony was not supported by the objective medical evidence. Even if the ALJ properly made the specific findings as asserted by Defendant, the only reason for rejecting Plaintiff's testimony would be that it was not supported by objective medical evidence. As this was the only reason that the ALJ gave for discrediting Plaintiff, the Court finds that the ALJ did not properly reject Plaintiff's testimony. See Bunnell, 947 F.2d at 347. Accordingly, the Court finds that the ALJ erred in determining Plaintiff's credibility.

**B.      Plaintiff's Daughter's Statements**

Plaintiff argues that the ALJ erred in giving little weight to the statements of Plaintiff's daughter, Gloria Rodriguez. Defendant counters that the ALJ gave germane reasons to discredit

Ms. Rodriguez's statements. Defendant contends that the ALJ properly discredited Ms. Rodriguez's statements because they were inconsistent with the medical evidence and medical opinions in the record and Ms. Rodriguez as a family member responsible for the care and management of the household may have been advocating for Plaintiff's disability.[4] Plaintiff replies that the record fails to demonstrate inconsistencies between Ms. Rodriguez's statements and the medical record. Plaintiff also replies that the mere fact that Ms. Rodriguez is related to Plaintiff is not a proper ground for rejecting her statements.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Stout, 454 F.3d at 1053; 20 C.F.R. § 404.1513(d)(4). "Lay witness testimony is competent evidence and cannot be disregarded without comment." Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)). The ALJ must give specific reasons germane to the witness in discounting the lay witness testimony. Stout, 454 F.3d at 1056.

Here, the ALJ found:

> The party statements from [Plaintiff's] daughter, Gloria Rodriguez (Exhibits 4E; 8E; 15E) were considered and given little weight. Ms. Rodriguez emphasized that her mother was disability [sic] due to difficulty walking and due to anxiety. However, [Plaintiff] did not receive treatment for anxiety and there was no evidence of a medically determinable impairment (Exhibits 2A, p. 9; 8A, p. 10). Additionally, [Plaintiff] reported to her to [sic] doctor that she had no difficulty with walking or balancing. Because our Regulations consider these to be a non-medical source, I have considered their statements as those of an "other source" (20 CFR 404.1513(a) and (d), 20 CFR 416.913(a) and (d), and SSR 06-03p). I give only some weight to these statements, due to their inconsistency with the objective medical evidence and medical opinions of record. Furthermore, Ms. Rodriguez did not have the medical training necessary to make exacting observations as to dates, frequencies, types, and degrees of medical signs and symptoms or the frequency or intensity of unusual moods or mannerisms. More importantly, by virtue of her relationship with [Plaintiff], I could not consider her to be a disinterested third party witness whose statements would not tend to be colored by affection for [Plaintiff] and a natural tendency to agree with the symptoms and limitations [Plaintiff] alleged.

(AR 18.)

---

[4] Defendant does not challenge Plaintiff's argument that it was improper for the ALJ to discount Ms. Rodriguez's statements because she was not an acceptable medical source. The Court notes that this was not a proper reason to reject Ms. Rodriguez's testimony. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (quoting Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993)).

Ms. Rodriguez provided three statements on: an October 9, 2012 third party function report, a May 3, 2013 third party function report, and an October 26, 2014 letter.

In the October 9, 2012 third party function report, Ms. Rodriguez stated that Plaintiff's back pain limits her from walking and she has a hard time standing for long periods of time. (AR 317.) These are the only limitations that Ms. Rodriguez stated when asked how Plaintiff's illnesses, injuries, or conditions limit her ability to work. (AR 317.) Ms. Rodriguez stated that Plaintiff's back pain does not allow her to do much of anything and she can walk for about 5 minutes before she has to lay down. (AR 322.)

In the May 3, 2013 third party function report, Ms. Rodriguez stated that Plaintiff cannot go anywhere because of the pain in her leg and back and because she does not like being around people. (AR 339.) Ms. Rodriguez noted that Plaintiff does not like being around others because of her anxiety. (AR 344.) Ms. Rodriguez stated that Plaintiff's illnesses, injuries, or conditions affect a number of her abilities. (AR 344.) Ms. Rodriguez noted that Plaintiff's anxiety acts up around people with authority, she quit her job because of anxiety, she does not handle stress well, she does not do well with changes in routine, and she does not care about anything. (AR 345.) In the remarks section, Ms. Rodriguez stated that Plaintiff's anxiety has gotten worse in the past few months, she does not care about herself or anybody else, she does not want to socialize, she has been crying a lot lately, and she does not eat. (AR 346.)

In the October 26, 2014 letter, Ms. Rodriguez stated that Plaintiff's back pain and arthritis cause Plaintiff to not really get out of bed except to use the bathroom. (AR 373.) She stated that Plaintiff does not cook, clean, or do anything on her feet for extended amounts of time because of the pain. (AR 373.) She also stated that Plaintiff has depression and anxiety. (AR 373.)

The ALJ found that Ms. Rodriguez's statements are inconsistent with the medical opinions in the record. As noted by the ALJ, State agency medical consultant Dr. William M. Backlund opined that Plaintiff could perform work consistent with the RFC that the ALJ found. (AR 18, 139-41.) The ALJ gave Dr. Backlund's opinion substantial weight. (AR 18.) Dr. Backlund's opinion that Plaintiff could walk for 4 hours in a workday is inconsistent with Ms.

Rodriguez's claims regarding Plaintiff's ability to walk. The ALJ also gave substantial weight to the opinions of State agency medical consultant psychiatrist Dr. E. Murillo and consultative psychologist Mary Lewis, Psy.D. (AR 13.) Dr. Murillo found that Plaintiff's mental impairment was non-severe and Dr. Lewis opined that Plaintiff did not exhibit any symptoms consistent with a major mental disorder. (AR 13.) Dr. Murillo and Dr. Lewis's findings and opinions are inconsistent with Ms. Rodriguez's claims regarding Plaintiff's anxiety and mental limitations. Therefore, Dr. Backlund, Dr. Lewis, and Dr. Murillo's opinions are inconsistent with Ms. Rodriguez's statements regarding Plaintiff's limitations, and specifically the limitations with walking and due to anxiety.

Accordingly, the Court finds that the ALJ provided a germane reason specific to Ms. Rodriguez that is supported by substantial evidence when she found that Ms. Rodriguez's statements were inconsistent with the medical opinions of record.[5] Therefore, the ALJ did not err in giving little weight to Ms. Rodriguez's statements.

///

---

[5] Defendant also argues that the ALJ properly gave little weight to Ms. Rodriguez's statements because she is not a disinterested third party witness. Here, the ALJ made a general statement that Ms. Rodriguez is not a disinterested third party witness. (AR 18.) The Ninth Circuit has found that "friends and family members in a position to observe a [plaintiff's] symptoms and daily activities are competent to testify as to [his or] her condition." Valentine, 574 at 694 (9th Cir. 2009) (quoting Dodrill, 12 F.3d at 918-19). Therefore, Ms. Rodriguez's third party testimony should not have been rejected just because she is an interested witness.

In addition, Defendant argues that the ALJ properly rejected Ms. Rodriguez's statements that Plaintiff has depression, anxiety, trouble walking such that she can only walk for about 5 minutes, and a hard time standing for long periods of time. (AR 317, 322, 339, 344-46, 373.) The ALJ rejected these statements because Plaintiff did not receive treatment for anxiety and there was no evidence of a medically determinable impairment, and because Plaintiff reported to her doctor that she had no difficulty with walking or balancing. (AR 18.) However, Plaintiff stated at times that her pain is aggravated by walking and that she had difficulty with walking. (AR 498, 518, 760, 803, 807, 811, 815, 818.) On June 10, 2013, K Furuya noted in the Disability Determination Explanation at the Reconsideration level that it would seem that they cannot affirm the prior decision of no psychological mentally determinable impairment, because Plaintiff is on Celexa for depression and notes improvement while on it. (AR 121, 137.) Therefore, the record does not support the ALJ's rejection of Ms. Rodriguez's statements because there was no evidence of a medically determinable impairment and Plaintiff reported to her doctor that she had no difficulty walking. While it appears that the ALJ was correct that Plaintiff did not receive treatment for anxiety, the Court notes that Ms. Rodriguez also stated that Plaintiff had depression and symptoms that may be indicative of depression and Plaintiff received medication for depression.

Therefore, any error by the ALJ in discrediting Ms. Rodriguez because she was not a disinterested third party witness and because her statements were inconsistent with the medical record are harmless because the ALJ provided a specific reason that is germane to Ms. Rodriguez and is supported by substantial evidence when the ALJ found that the statements are inconsistent with the medical opinions in the record. See Valentine, 574 F.3d at 694.

**C.     Remand**

The ordinary remand rule provides that when "the record before the agency does not support the agency action, ... the agency has not considered all relevant factors, or ... the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014). This applies equally in Social Security cases. Treichler, 775 F.3d at 1099. Under the Social Security Act "courts are empowered to affirm, modify, or reverse a decision by the Commissioner '*with or without* remanding the cause for a rehearing.' " Garrison v. Colvin, 759 F.3d 995, 1019 (9th Cir. 2014) (emphasis in original) (quoting 42 U.S.C. § 405(g)). The decision to remand for benefits is discretionary. Treichler, 775 F.3d at 1100. In Social Security cases, courts generally remand with instructions to calculate and award benefits when it is clear from the record that the claimant is entitled to benefits. Garrison, 759 F.3d at 1019.

The Ninth Circuit has "devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." Garrison, 759 F.3d at 1020. The credit as true doctrine allows "flexibility" which "is properly understood as requiring courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled. Id. at 1021. Even when the circumstances are present to remand for benefits, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in our discretion." Treichler. 775 F.3d at 1102 (quoting Swenson v. Sullivan, 876 F.2d 683, 689 (9th Cir. 1989)).

Here, Plaintiff requests that this action be remanded to the Commissioner for further

consideration. It is unclear whether Plaintiff is, in fact, disabled. Accordingly, this action shall be remanded for further consideration.

## V.
## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did err in making an adverse credibility finding against Plaintiff because she did not provide clear and convincing reasons supported by substantial evidence to discredit Plaintiff. However, the Court finds that the ALJ did not err in giving little weight to Ms. Rodriguez's statements.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED;
2. Defendant's motion for summary judgment is DENIED;
3. The Court REMANDS this action back to the Commissioner for further administrative proceedings consistent with this opinion;
4. The Clerk of the Court is DIRECTED to enter judgment in favor of Plaintiff Patricia Flores and against Defendant Commissioner of Social Security; and
5. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **June 27, 2017**

UNITED STATES MAGISTRATE JUDGE